# EXHIBIT A

# FILINGS WITH STATE COURT

## COMMONWEALTH OF MASSACHUSETTS

**ESSEX, ss.**

**SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO.: 2277CV00198 B**

MICHAEL A. WHITNEY & )
JILLIAN A. WHITNEY, )
)
    **Plaintiffs** )
)
**v.** )
)
BUCHER MUNICIPAL NORTH )
AMERICA, INC., )
)
    **Defendant** )

*FILED
ESSEX SUPERIOR COURT
22 MAR -2 AM 9: 52*

### COMPLAINT AND DEMAND
### FOR JURY TRIAL

    NOW COME the plaintiffs, Michael A. Whitney and Jillian A. Whitney, by and through their counsel, and allege the following:

### PARTIES

    1.    The plaintiff, Michael A. Whitney, is an individual residing at 3 North Landing Way, Gloucester, Essex County, Massachusetts.

    2.    The plaintiff, Jillian A. Whitney, is an individual and wife of plaintiff Michael A. Whitney residing at 3 North Landing Way, Gloucester, Essex County, Massachusetts.

    3.    The defendant, Bucher Municipal North America, Inc., is a foreign corporation incorporated in the state of Delaware with its principal place of business located at 105 Motorsports Road, Mooresville, NC 28115-8258. The name of its registered agent, Incorp Services, Inc., is located at 176 Mine Lake Court, Suite 100, Raleigh, Wake County, North Carolina 27615-6417.

## JURISDICTION

4.     Jurisdiction and venue are proper in this Court pursuant to M.G.L. c. 223, § 2, *et seq.*

## FACTS

5.     At all relevant times hereto, and in particular on or about March 8, 2019, the plaintiff Michael A. Whitney (Whitney) was an employee for Rapid Flow, Inc. (Rapid Flow), a sewer and drain cleaning company located in Chelsea, Wilmington, Massachusetts.

6.     At all relevant times hereto, and in particular on or about March 8, 2019, the defendant Bucher Municipal North America, Inc. (Bucher) was a business located at Mooresville, North Carolina selling and servicing sweepers, and sewer and drain units.

7.     At all relevant times hereto, and in particular on or about August, 2018, Rapid Flow purchased a new Recycler CR 120 recycler sewer cleaning unit from Bucher.

8.     At all relevant times hereto, and in particular on or about August, 2018, Bucher sent technicians agents/and or employees Rodger Wynn (Wynn) and Matt Lewis (Lewis) to Rapid Flow to train plaintiff Whitney in the use of the Recycler CR 120.

9.     At all relevant times hereto, and in particular on or about August, 2018, Bucher's training technicians Wynn and Lewis told Whitney that the training period would last four weeks.

10.     At all relevant times hereto, and in particular on or about August, 2018, Bucher's training technicians Wynn and Lewis told Whitney in the middle of training week two that "although the training period was scheduled to last four weeks, Whitney's training would only last two weeks because Whitney picked it up so fast" and the trainers were going to leave to go back to Bucher at the end of week two.

2

11.    At all relevant times hereto, and in particular on or about August, 2018, Bucher training technicians Wynn and Lewis experienced firsthand on multiple occasions that the Recycler CR 120 was not working properly.

12.    At all relevant times hereto, and in particular on or about August, 2018, Bucher technicians Wynn and Lewis were present at Rapid Flow to repeatedly service the Recycler CR 120.

13.    At all relevant times hereto, and in particular on or about August, 2018, Rapid Flow notified Bucher on at least five occasions that the Recycler CR 120 was not working properly, including but not limited to, issues with the computer sensor/computer malfunction.

14.    At all relevant times hereto, and in particular on or about August, 2018, if Bucher technicians were not on hand at Rapid Flow to personally service the Recycler CR 120, plaintiff Whitney was forced to call technician Wynn who put Whitney in contact with Bucher head machinic Henry.

15.    At all relevant times hereto, and in particular on or about August, 2018, Bucher head mechanic Henry told plaintiff Whitney that the censor was causing the Recycler CR120 to malfunction, and that the censor on this particular unit was an aftermarket censor.

16.    At all relevant times hereto, and in particular on or about August, 2018, Bucher head mechanic Henry told plaintiff Whitney that he would ne sending Whitney all new sensors to replace the existing sensors on the Recycler CR120.

17.    At all relevant times hereto, and in particular on or about October, 2018, plaintiff Whitney was forced to make another telephone call to Bucher head mechanic Henry to inform him that the computer was once again malfunctioning on the Recycler CR120,

3

indicating that the tanks were dirty and the clean water tank was not full when it actually was full.

18.     At all relevant times hereto, and in particular on or about October, 2018, plaintiff Whitney was forced to make another telephone call to Bucher head mechanic Henry who instructed plaintiff Whitney to return the Recycler CR120 to Rapid Flow's shop.

19.     Once plaintiff Whitney the truck returned to the shop, Henry instructed Whitney to plug the truck's computer into the internet, where Bucher technical technician Pierre serviced the truck's computer from Denmark.

20.     At all relevant times hereto, and in particular on or about October, 2018, and over the next months, plaintiff Whitney was repeatedly forced to call Pierre to inform him of ongoing computer malfunctions, and Pierre repaired the computer malfunctions from Denmark via the internet.

21.     At all relevant times hereto, and in particular on or about October 18, 2018, as a result of ongoing computer malfunctions, Bucher flew their technician, employee and or agent Jacob from California to Rapid Flow in Chelsea, MA to inspect the Recycler CR120.

22.     At all relevant times hereto, and in particular on or about October 18, 2018, Bucher technicians, employees and or agents Jacob, in person from Rapid Flow and Pierre through the internet from Denmark, once again changed all the sensors on the Recycler CR120.

23.     A short time after Bucher technicians fixed the computer sensor issues, the control panel lights malfunctioned on the Recycler CR120. Jacob reset the truck using the master switch.

24.     Jacob left Rapid Flow on or about October 19, 2018, telling plaintiff Whitney that he would return to Rapid Flow the following Tuesday to do additional repairs on the Recycler CR120.

25.     The following day, October 20, 2018, plaintiff Whitney placed a telephone call to Jacob to inform him that the truck power take off would not engage. Jacob gave instructions to Whitney via text to kill the master switch and to try it again. Jacob then asked Whitney if there were any error messages, and Whitney informed Jacob that there was not. Jacob told Whitney that he would come back on Friday.

26.     On that Friday, Jacob plugged the Recycler CR120 module into his own personal computer, then tried to engage the power take off. The power take off still wouldn't engage until Jacob "killed the power a few times". Jacob told Whitney that the computer should have displayed an error message indicating the problem, but it did not.

27.     Jacob came back to rapid Flow again on October 23, 2018, plugged the truck module into his own personal computer and restored the truck to working order.

28.     On or about November 1, 2018, Jacob returned to Rapid Flow with a similar Recycler truck that Whitney was operating to check on Whitney's truck. Jacob also instructed Whitney how to blow out the truck at the end of the day.

29.     On or about December, 2018, the Recycler CR 120, with the cold weather in the Boston area, the Recycler CR 120 began to experience new operating issues. Neither one of the two jet hoses were functional, the truck boiler malfunctioned, and the truck computer module malfunctioned. After inspection, Jacob informed Whitney that a broken weld in the wall between the two tanks was causing air to escape, and a new wall needed to be installed.

30.    On or about December, 2018, the truck computer module would continually freeze and cease to work due to the external cold weather. When Whitney reported this issue to Jacob, Jacob told Whitney that this particular recycler CR 120 was designed for warm west coast weather, and the trucks sold in Canada can stay outside in twenty-degree weather because those models are designed with the computer module inside a heated box. Jacob further stated that this particular truck was the first Bucher Recycler sold on the east coast.

31.    On or about January 23, 2019, Whitney filled the truck with water and the truck sensor was reading that the truck was empty. Jacob instructed Whitney to contact Henry, who instructed Whitney to bring the truck back to Rapid Flow. Henry once again hooked the truck up to his computer to diagnosis the issue.

32.    On or about February 25, 2019, Whitney informed Henry that the recycle pump was not working, and Henry told Whitney that he believed that the course filter could be frozen. Henry told Whitney that he could not personally come to the truck to address the issue, telling Whitney by telephone to do a filter clean on the control panel, then drain the truck and check the course filter again. Henry then told Whitney to open up both valves, refill the front tank with water and hit the vacuum suction recycle on the control panel. The truck computer module turned on briefly before shutting off again. Henry told Whitney that he would come to inspect the truck personally, however, he could not be there until the next Saturday. Henry instructed Whitney to continue to use the truck.

33.    On or about March 5, 2019, with the temperature in the teens, the recycler CR 120 suddenly stopped recirculating the water, and the hose reel froze. Whitney contacted Henry, who told Whitney to reset the boiler. Whitney reset the boiler, however, the hose was

still not functioning. Whitney returned the truck to the Rapid Flow and parked it in their garage.

34.     On or about March 8, 2019, Whitney was dispatched to an emergency job on Nashua Street in Boston. Another employee named Jimmy was operating the "tv" truck, equipped with a camera for inspection. Whitney filled the truck with water and he drove to the Boston Water and Sewer site on Alford Street in Boston. He turned the water on and ran it through the jet hose to blow the air out of the hose to allow the water to flow freely through the jet hose.

35.     Whitney opened the manhole cover to blow the jet hose into the manhole. Whitney then lowered the water pressure before turning the jet hose on. Suddenly and without warning, Whitney was struck in the face by the eight to twelve (8-12) pound brass hose nozzle, causing Whitney to fall backwards onto the tar pavement striking g the back of his head.

36.     At all relevant times hereto, and in particular on or about March 8, 2019, Rapid Flow stored the Recycler CR 120 inside a heated garage bay at their Chelsea location.

## COUNT I

## BREACH OF EXPRESS WARRANTY

37.     The plaintiff hereby realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 36 as if fully restated in their entirety herein.

38.     The defendant Bucher Municipal North America, Inc. on or about August, 2018, made a statement of fact or promise about the Recycler CR 120 (goods) as part of the basis of the bargain created an express warranty that the Recycler CR 120 will conform to the sellers affirmation or promise.

7

39.     The defendant Bucher, on or about August, 2018, breached its statement of fact or promise that it made to the seller that the Recycler CR 120 would conform to Bucher's affirmation or promise.

40.     The loss to the plaintiff is a tort loss, since his personal injury resulted from the defendant's breach of express warranty.

41.     As a direct result of this breach, the plaintiff sustained severe and permanent personal injuries, suffered great pain of body and anguish of mind, and was put to great expense for medical treatment and attendance.

## COUNT II

## BREACH OF IMPLIED WARRANTY

42.     Plaintiff hereby realleges and restates paragraphs 1 through 41 as if fully restated in their entirety herein.

43.     Defendant Bucher's nature of business is "distribution of street sweepers, sewer & drainage, and winter maintenance equipment".

44.     Two warranties are implied in the sale of goods: 1) that the goods are fit for the ordinary purposes for which such goods are used, and, 2) if goods are sold for a particular purpose, that they are fit for that purpose.

45.     These warranties run from the manufacturer, seller, lessor, or supplier of the goods to anyone defendant Bucher might reasonably have expected to use, consume, or be affected by the goods.

46.     The defendant Bucher, on or about August, 2018, breached these two warranties that it made to the seller that the Recycler CR 120 was fit for Bucher's purpose for use of the Recycler CR 120.

47.     As a direct result of this breach, the plaintiff sustained severe and permanent personal injuries, suffered great pain of body and anguish of mind, and was put to great expense for medical treatment and attendance.

## COUNT III

### NEGLIGENT DESIGN

48.     The plaintiff hereby realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 47 as if fully restated in their entirety herein.

49.     A manufacturer is under a duty to use reasonable care to design a product that is reasonably safe for its intended use, and to design its products with reasonable care to eliminate avoidable dangers.

50.     The defendant designed the Recycler CR 120 with the operating computer module located on the outer body of the truck.

51.     This design left the operating computer module exposed to the Boston area winter elements.

52.     As a direct result of the exposure to freezing temperatures, the operating computer malfunctioned.

53.     It was foreseeable that plaintiff would be utilizing this truck in the frigid Boston area winter temperatures.

54.     It was foreseeable that continued exposure in the frigid Boston area winter temperatures would cause the exposed operating computer module to malfunction.

55.     Service technicians, agents of defendant Bucher, personally told the plaintiff that this particular Recycler CR 120 was designed for warm west coast weather, and the trucks sold in Canada can stay outside in twenty-degree weather because those models are

designed with the computer module inside a heated box. Jacob further stated that this particular truck was the first Bucher Recycler sold on the east coast.

56.     Bucher breached this duty to use reasonable care to design a product that is reasonably safe for its intended use, and to design its products with reasonable care to eliminate avoidable dangers by designing this particular Recycler CR 120 designed for warm west coast weather, unlike the trucks sold in Canada can stay outside in twenty-degree weather because those models are designed with the computer module inside a heated box.

57.     As a direct result of this breach, the plaintiff sustained severe and permanent personal injuries, suffered great pain of body and anguish of mind, and was put to great expense for medical treatment and attendance.

**COUNT IV**

**NEGLIGENCE**

58.     Plaintiff hereby realleges and restates paragraphs 1 through 57 as if fully restated in their entirety herein.

59.     Defendant Bucher, as a manufacturer, seller, lessor, or supplier of a product is under a duty to exercise reasonable care to any persons it might reasonably expect to use, consume or be affected by the goods.

60.     The defendant sold the Recycler CR 120 to Whitney's employer Rapid Flow with the operating computer module located on the outer body of the truck.

61.     By selling to the Boston area, Bucher knew or should have known that the operating computer module exposed to the Boston area winter elements.

62.     As a direct result of the exposure to freezing temperatures, the operating computer malfunctioned.

63. It was foreseeable that plaintiff would be utilizing this truck in the frigid Boston area winter temperatures.

64. It was foreseeable that continued exposure in the frigid Boston area winter temperatures would cause the exposed operating computer module to malfunction.

65. Service technicians, agents of defendant Bucher, personally told the plaintiff that this particular Recycler CR 120 was designed for warm west coast weather, and the trucks sold in Canada can stay outside in twenty-degree weather because those models are designed with the computer module inside a heated box. Jacob further stated that this particular truck was the first Bucher Recycler sold on the east coast.

66. Defendant Bucher, as a manufacturer, seller, lessor, or supplier of a product is breached its duty to exercise reasonable care to any persons it might reasonably expect to use, consume or be affected by the goods, by selling a truck designed for warm west coast weather to a buyer in Boston that was not equipped with its computer module inside a heated box.

67. As a direct result of this breach, the plaintiff sustained severe and permanent personal injuries, suffered great pain of body and anguish of mind, and was put to great expense for medical treatment and attendance.

## COUNT V

## NEGLIGENT TRAINING

68. Plaintiff hereby realleges and restates paragraphs 1 through 67 as if fully restated in their entirety herein.

69. Defendant Bucher's business is addition to distributing street sweepers, sewer and drainage, and winter maintenance equipment, also offers its customers to get the most of their products by offering training for its users and operators.

11

70.     At all relevant times hereto, and in particular on or about August, 2018, Bucher sent technicians agents/and or employees Rodger Wynn (Wynn) and Matt Lewis (Lewis) to Rapid Flow to train plaintiff Whitney in the use of the Recycler CR 120.

71.     At all relevant times hereto, and in particular on or about August, 2018, Bucher's training technicians Wynn and Lewis told Whitney that the training period would last four weeks.

72.     At all relevant times hereto, and in particular on or about August, 2018, Bucher's training technicians Wynn and Lewis told Whitney in the middle of training week two that "although the training period was scheduled to last four weeks, Whitney's training would only last two weeks because Whitney picked it up so fast" and the trainers were going to leave to go back to Bucher at the end of week two.

73.     Bucher had a duty to properly train both users and operators of its Recycler CR 120 as per its agreement with Rapid Flow, specifically including plaintff Whitney.

74.     Bucher breached its duty to properly train plaintiff Whitney by depriving him of two full weeks of training.

75.     As a direct result of this breach, the plaintiff sustained severe and permanent personal injuries, suffered great pain of body and anguish of mind, and was put to great expense for medical treatment and attendance.

## COUNT VI

### NEGLIGENT REPAIR

76.     Plaintiff hereby realleges and restates paragraphs 1 through 75 as if fully restated in their entirety herein.

77.     Defendant Bucher, as a manufacturer, seller, lessor, or supplier of a product is under a duty to exercise reasonable care to maintain a product to be reasonably safe for its intended use, and to maintain its products with reasonable care to eliminate avoidable dangers to be reasonably safe to any persons it might reasonably expect to use, consume or be affected by the goods.

78.     Defendant Bucher, on or about August, 2018, from March, 2019, breached its duties that it had to any persons it might reasonably expect to use, consume or be affected by the goods by failing to repair the Recycler CR 120 on numerous occasions.

79.     As a direct result of this breach, the plaintiff sustained severe and permanent personal injuries, suffered great pain of body and anguish of mind, and was put to great expense for medical treatment and attendance.

## COUNT VII

## LOSS OF CONSORTIUM

80.     Plaintiff hereby realleges and restates paragraphs 1 through 79 as if fully restated in their entirety herein.

81.     Plaintiff. Jillian A. Whitney is the spouse of the plaintiff, Michael A. Whitney and the person entitled by law to the care, comfort, services and consortium of the plaintiff, Michael A. Whitney.

82.     As a result of the negligence of the defendant, Bucher, the plaintiff, Jillian A. Whitney sustained the loss of care, comfort, services and consortium of her spouse, plaintiff Michael A. Whitney.

## COUNT VIII

## BREACH OF IMPLIED WARRANTY AS VIOLATING CHAPTER 93A

83.    Plaintiff hereby realleges and restates paragraphs 1 through 82 as if fully restated in their entirety herein.

84.    The Massachusetts Attorney General, pursuant to G.L. c. 93A, s. 2(c), has promulgated a regulation providing that "it shall be an unfair and deceptive act or practice to fail or perform or fulfill any promises or obligations arising under a warranty". 940 Code Mass. Regs. s. 3.08(2) (1986).

85.    The regulations specifically include the implied warranty of merchantability under the definition of 'warranty'. 940 Code Mass. Regs. S. 3.01 (1986).

86.    Pursuant to M.G.L. c. 93A, s. 9, anyone, except a chapter 93A business plaintiff, injured by a defective product may be entitled to chapter 93A relief.

87.    Defendant Bucher's nature of business is "distribution of street sweepers, sewer & drainage, and winter maintenance equipment".

88.    Two warranties are implied in the sale of goods: 1) that the goods are fit for the ordinary purposes for which such goods are used, and, 2) if goods are sold for a particular purpose, that they are fit for that purpose.

89.    These warranties run from the manufacturer, seller, lessor, or supplier of the goods to anyone defendant Bucher might reasonably have expected to use, consume, or be affected by the goods.

90.    The defendant Bucher, on or about August, 2018, breached these two warranties that it made to the seller that the Recycler CR 120 was fit for Bucher's purpose for use of the Recycler CR 120.

91.    As a direct result of this breach, the plaintiff sustained severe and permanent personal injuries, suffered great pain of body and anguish of mind, and was put to great expense for medical treatment and attendance.

WHEREFORE, Plaintiffs request that the Court grant the following relief:

A.    To enter judgment against defendant in an amount equal to their damages in Counts I through VIII;

B.    To award plaintiffs their costs of suit, including attorneys' fee's;

C.    To award the plaintiffs interest; and

D.    Grant such other and further relief as this Court deems just and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY**

DATED: March 2, 2022

Respectfully submitted,
Plaintiffs,
By their attorney,

James M. Peterson, Esquire (BBO #558274)
Kimberly M. Peterson, Esquire (BBO #629759)
The Law Office of James M. Peterson
314 Main Street
Suite 104
Wilmington, MA 01887
(978) 658-3216
jamespeterson.law@verizon.net

FILED
ESSEX SUPERIOR COURT
22 MAR -2 AM 9:52

| CIVIL ACTION COVER SHEET | DOCKET NUMBER 2277CV00198B | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| PLAINTIFF(S): | Michael A. Whitney and Jillian A. Whitney | | COUNTY | Essex |
|---|---|---|---|---|
| ADDRESS: | 3 North Landing Way | | | |
| | Gloucester, MA 01930 | | DEFENDANT(S): | Bucher Municipal North America, Inc. |

| ATTORNEY: | James M. Peterson | | | |
|---|---|---|---|---|
| ADDRESS: | The Law Office of James M. Peterson | | ADDRESS: | 105 Motorsports Road |
| | 314 Main Street Suite 104 | | | Mooresville, NC 28115-8258 |
| | Wilmington, MA 01887 | | | |
| BBO: | 558274 | | | |

**TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B04, B05 | Products Liability, Negligence | F | ☒ YES   ☐ NO |

*If "Other" please describe:

Is there a claim under G.L. c. 93A?   ☒ YES   ☐ NO           Is this a class action under Mass. R. Civ. P. 23?   ☐ YES   ☒ NO

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(attach additional sheets as necessary)

A. Documented medical expenses to date:
 1. Total hospital expenses ......................................................................................... $354,957.42
 2. Total doctor expenses ........................................................................................... $3,594.00
 3. Total chiropractic expenses .................................................................................... $0
 4. Total physical therapy expenses ............................................................................ $8,672.71
 5. Total other expenses (describe below) ................................................................... $1,406.73
 Ambulance                                                                    Subtotal (A): $368,630.86
B. Documented lost wages and compensation to date ................................................... $90,000.00
C. Documented property damages to date .................................................................... $0
D. Reasonably anticipated future medical and hospital expenses ..................................... $25,000.00
E. Reasonably anticipated lost wages .......................................................................... $0
F. Other documented items of damages (describe below) ............................................... $0

G. Briefly describe plaintiff's injury, including the nature and extent of injury:
 Skull fracture, extensive facial fractures, traumatic brain injury, bilateral traumatic glaucoma

TOTAL (A-F): $ 483,630.86

### CONTRACT CLAIMS
(attach additional sheets as necessary)

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).
Provide a detailed description of claim(s):

TOTAL: $ 0

Signature of Attorney/ Unrepresented Plaintiff: X _James Peterson_                     Date: Mar 2, 2022

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X _James Peterson_                     Date: Mar 2, 2022

| CIVIL TRACKING ORDER<br>(STANDING ORDER 1- 88) | DOCKET NUMBER<br>**2277CV00198** | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

| CASE NAME:<br> Michael A Whitney et al vs. Bucher Municipal North America, INC. | Thomas H. Driscoll, Jr., Clerk of Courts |
|---|---|
| TO:  File Copy | COURT NAME & ADDRESS<br> Essex County Superior Court - Newburyport<br> 145 High Street<br> Newburyport, MA 01950 |

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

<u>STAGES OF LITIGATION</u>                                    <u>DEADLINE</u>

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 05/31/2022 | |
| Response to the complaint filed (also see MRCP 12) | | 06/30/2022 | |
| All motions under MRCP 12, 19, and 20 | 06/30/2022 | 08/01/2022 | 08/29/2022 |
| All motions under MRCP 15 | 06/30/2022 | 08/01/2022 | 08/29/2022 |
| All discovery requests **and depositions** served and non-expert depositions completed | 12/27/2022 | | |
| All motions under MRCP 56 | 01/26/2023 | 02/27/2023 | |
| Final pre-trial conference held and/or firm trial date set | | | 06/26/2023 |
| Case shall be resolved and judgment shall issue by | | | 03/01/2024 |

**The final pre-trial deadline is <u>not the scheduled date of the conference</u>. You will be notified of that date at a later time.**

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED<br>**03/02/2022** | ASSISTANT CLERK<br>**Stefano J Cornelio** | PHONE<br>**(978)462-4474** |
|---|---|---|

Date/Time Printed: 03-02-2022 13:31:35                                                                                   SCVI-26\ 08/2018

| NOTICE TO ATTORNEY GENERAL OF COMPLAINT ON CHAPTER 93A ACTION | DOCKET NUMBER<br>2277CV00198 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|
| CASE NAME:<br>Michael A Whitney et al vs. Bucher Municipal North America, INC. | | Thomas H. Driscoll, Jr., Clerk of Courts |

| | COURT NAME & ADDRESS |
|---|---|
| Attorney General<br>Consumer Protection Division<br>One Ashburton Place<br>Boston, MA 02108-1698 | Essex County Superior Court - Newburyport<br>145 High Street<br>Newburyport, MA 01950 |

Pursuant to G.L. c. 93A, § 10, enclosed is a copy of the complaint seeking relief under G.L. c. 93A. The action was filed in this court on 03/02/2022.

| DATE<br>03/02/2022 | CLERK OF COURTS<br>Thomas H. Driscoll, Jr., Clerk of Courts | |
|---|---|---|

SCV089\ 02/2016



Summons   CIVIL DOCKET NO.
2277CV0198

**Trial Court of Massachusetts**

**The Superior Court**

CASE NAME:

MICHAEL A. WHITNEY & JILLIAN A. WHITNEY

Plaintiff(s)

vs.

BUCHER MUNICIPAL NORTH AMERICA, INC.

Defendant(s)

Thomas H. Driscoll, Jr.          Clerk of Courts

Essex                            County

COURT NAME & ADDRESS:

Essex Superior Court
56 Federal Street
Salem, MA 01970

THIS SUMMONS IS DIRECTED TO  BUCHER MUNICIPAL N.A., INC.  (Defendant name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the  Essex  Superior  Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**

To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

a) Filing your **signed original** response with the Clerk's Office for Civil Business,  Essex Superior   Court
56 Federal Street Salem, MA 01970
(address), by mail or in person **AND**

b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:
314 Main Street
Suite 104
Wilmington, MA 01887

3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as counterclaims) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after serving your Answer.

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12**. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

4. **Legal Assistance.**

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required Information on All Filings:**

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Heidi E. Brieger _____, Chief Justice on **March 7, 2022** _____, 20 __. (Seal)

Clerk-Magistrate Thomas H. Driscoll, Jr. _____

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

## PROOF OF SERVICE OF PROCESS

I hereby certify that on **3/18/22** . I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

SERVED, CORPORATE

KIM ENNIS, REG. AGENT

Dated: 3/18/22                    Signature: _____ 3389

---

N.B.   TO PROCESS SERVER:

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

Date: _____

rev. 7/21

STATE OF NORTH CAROLINA
COUNTY OF WAKE



STATE OF MASSACHUSETTS
COUNTY OF ESSEX

Plaintiff Name:
WHITNEY, MICHAEL A & JILLIAN A

*Versus*

Defendant Name:
BUCHER MUNICIPAL NORTH AMERICA INC
176 MINE LAKE CT 100
RALEIGH, NC 27615

**DEPUTY'S AFFIDAVIT
OF SERVICE**

Court File No: 2277CV01198

I, _Richard Palmer_, being a duly sworn Deputy Sheriff of
Wake County, Raleigh, North Carolina, States that in the above referenced matter,  on the
_18_ Day of _MARCH_ ,20_22_ at _1:34_ { } AM {X} PM, HE/SHE
{X} SERVED/ { } WAS UNABLE TO SERVE, BUCHER MUNICIPAL NORTH AMERICA INC, legal service of Summons,
Complaint, Civil Action Cover Sheet, Civil Tracking Order  , on Defendant/Person to serve as follows: (check one):

[ ]   BY DELIVERING TO DEFENDANT / PERSON TO SERVE A COPY (IES)

[ ]   BY LEAVING A COPY (IES) AT THE DWELLING HOUSE OR USUAL PLACE OF ABODE OF THE DEFENDANT/
       PERSON TO SERVE, WITH A PERSON OF SUITABLE AGE.

[X]   AS THE DEFENDANT / PERSON TO SERVE IS A CORPORATION, SERVICE WAS EFFECTED BY DELIVERING
       A COPY(IES) TO WHO IS AN OFFICER OF THE CORPORATION.  _KIM ENNIS, REG AGENT_

[ ]   NOT SERVED: DEFENDANT/PERSON NOT FOUND IN WAKE COUNTY.

[ ]   OTHER:_____

Service Name:_____

**GERALD M. BAKER**
SHERIFF OF WAKE COUNTY

BY:_____

*DEPUTY SHERIFF*

SUBSCRIBED AND SWORN TO BEFORE ME THIS
THE _18_ DAY OF _March 2022_ ,
_Carolyn Monroe_
NOTARY PUBLIC, WAKE COUNTY, NORTH CAROLINA
MY COMMISSION EXPIRES THE _30_ DAY OF _June 2024_

CAROLYN MONROE
NOTARY
Comm. Exp.
6-30-2024
PUBLIC
WAKE COUNTY, NC

ESSEX SUPERIOR COURT
FILED

R_Civi83

